Mr. Raymond Simon, Director Arkansas Department of Education 4 State Capitol Mall, Room 404-A Little Rock, AR 72201-1071
Dear Mr. Simon:
I am writing in response to your request for an opinion on four questions regarding Arkansas Code Annotated § 6-13-631 (Repl. 1999) as amended by Act 1716 of 2001. That statute, as you note, provides that when the minority population of a school district is ten percent (10%) or greater compared to the total population of a school district, based upon the most recent federal decennial census, the local school board must divide the school district into single-member zones. The school board may opt between five single-member zones, seven single-member zones, or five single-member zones with two at-large positions. You also note that each school district is required to submit a letter to the Department of Education on or before August 1, 2002, informing the Department as to whether the district is subject to the statute and how it has complied with the statute. The statute provides that the Department shall withhold twenty percent of the annual state funds allocated to a school district that is not in compliance with the statute.
You note that on May 2, 2001, the Department of Education sent a memo to the superintendents of the Arkansas school districts informing them of the requirements of A.C.A. § 6-13-631. Since that time, you note, the Department has received numerous phone calls informing it that the most recent decennial census information is "not in such a format to allow the school districts enough time to establish single-member zones within the required ninety (90) days before the annual school election of 2001." The annual school election is held on the third Tuesday in September or September 18, 2001. See A.C.A. § 6-14-102 (Repl. 1999). That makes the ninety-day deadline June 20, 2001.
You pose four questions relating to these facts:
 1. For those school districts that have a ten percent (10%) or greater minority population compared to the total population of the school district and do not qualify for any of the exemptions to the required single-member zones as set forth in A.C.A. § 6-13-631 (Repl. 1999), must those school districts divide into single-member zones ninety (90) days before the annual school election of 2001 or ninety (90) days before the annual school election of 2002? This question is especially relevant if the census information is not readily available to school districts before the ninety (90) day time frame in 2001 and the district is not required to report compliance pursuant to A.C.A. § 6-13-631 (Repl. 1999) until August 1, 2002.
 2. Are school districts to determine whether they have a ten percent (10%) or greater minority population of the total population of the school district or only of the qualified elector population of the school district?
 3. Pursuant to A.C.A. § 6-13-631 (Repl. 1999), is the Department of Education required to withhold twenty percent (20%) of state funding to a school district that has a ten percent (10%) or greater minority population, does not qualify for an exemption to zoning, and attempts to divide into single-member zones prior to ninety (90) days before the annual school election but does not receive approval of the single-member zones from the controlling county board of election commissioners prior to the annual school election and, therefore, is not in compliance with the zoning requirements?
 4. If the Department of Education is required to withhold funding to a school district that fails to comply with the requirements of A.C.A. § 6-13-631 (Repl. 1999), from which school year should the funds be withheld from the school district, the school year of the failure to comply or the school year the district is required to report noncompliance (i.e., school year 2001-2002 or school year 2002-2003)?
RESPONSE
In my opinion the answer to your first question is ninety days before the annual school election of 2001. The answer to your second questions is that the ten percent figure is based upon the total population of the district and not the qualified elector population. It is my opinion that the answer to your third question is unclear under current law and may require revision of the applicable rules and regulations by the State Board of Education. Such a district will not be in compliance with the statute on August 1, 2002, but the exact point at which the Department is required to withhold state funds is unclear. In my opinion, in response to your fourth question, the funds may not be withheld until after the reporting date of August 1, 2002, i.e., sometime just prior to or in the 2002-2003 school year. Again, however, the exact date the Department must begin the withholding of state funds is currently unclear.
Question 1 — For those school districts that have a ten percent (10%) orgreater minority population compared to the total population of theschool district and do not qualify for any of the exemptions to therequired single-member zones as set forth in A.C.A. § 6-13-631 (Repl.1999), must those school districts divide into single-member zones ninety(90) days before the annual school election of 2001 or ninety (90) daysbefore the annual school election of 2002? This question is especiallyrelevant if the census information is not readily available to schooldistricts before the ninety (90) day time frame in 2001 and the districtis not required to report compliance pursuant to A.C.A. § 6-13-631(Repl. 1999) until August 1, 2002.
In my opinion the statute contemplates that the districts will divide into single-member districts ninety days before the annual school election of 2001. The relevant statute provides in pertinent part as follows:
 (a) Beginning with the 1994 annual school election, the qualified electors of a school district having a ten percent (10%) or greater minority population out of the total population, as reported by the most recent federal decennial census information, shall elect the members of the board of directors as authorized in this section, utilizing selection procedures in compliance with the federal Voting Rights Act of 1965, as amended.
 (b)(1) At least ninety (90) days before the election, the local board of directors shall:
 (A) By resolution choose to elect board members from five (5) or seven (7) single-member zones or from five (5) single-member zones and two (2) at large; and
 (B) With approval of the controlling county board of election commissioners, shall divide each school district having a ten percent (10%) or greater minority population into five (5) or seven (7) single-member zones in accordance with the federal Voting Rights Act of 1965, as amended.
 (2) Zones shall have substantially equal population, with boundaries based on the most recent available federal decennial census information.
* * *
 (f)(1) After each federal decennial census and at least ninety (90) days before the annual school election, the local board of directors, with the approval of the controlling county board of election commissioners, shall divide each school district having a ten percent (10%) or greater minority population into single-member zones. The zones shall be based on the most recent federal decennial census information and substantially equal in population.
 (2) At the annual school election following the rezoning, a new school board shall be elected in accordance with procedures set forth in this section.
* * *
 (h)(1) On or before August 1, 2002, and every decade thereafter, each and every school district shall submit to the Department of Education a letter stating whether or not its school board falls under this section. In that same letter, each school district that falls under this section shall state how it has complied with this section.
Furthermore, in the same letter, any school district that believes that it is exempt from this section shall state under which provision it is exempt.
 (2) The department shall withhold twenty percent (20%) of the annual state funds allocation to a school district not in compliance with this section.
 (i) The State Board of Education is hereby authorized to adopt rules and regulations necessary for the implementation of this section.
A.C.A. § 6-13-631 (emphasis added).[1]
In my opinion the statute contemplates that the rezoning will take place ninety days before the annual school election of 2001. I assume your question refers to a district or district, which, by virtue of the 2000 federal decennial census, now for the first time has a minority population equaling or exceeding ten percent. The statute states that "[a]fter each federal decennial census and at least ninety (90) days before the annual school election," the district shall be divided into zones. The Census Bureau is required to release certain census information within one year following the "decennial census date," which is set as April 1 of the year ending in "0." See 13 U.S.C. § 141(a) and (c). This has been a requirement of federal law since at least the mid-seventies. See P.L. 94-171. The pertinent census information thus was released this year by April 1, 2001.
In my opinion the Arkansas General Assembly will be presumed to have been cognizant of this date when it passed Act 786 of 1993, the act that first imposed the single-member zone requirement. See e.g., generally, Kellemsv. Brown, 163 Conn. 478, 313 A.2d 53 (1972) (court would presume that legislature used terms in a tax statute in light of federal income tax practice and existing regulations) and Goldberg Co. v. Division ofEmployment Security, 21 N.J. 107, 121 A.2d 12 (1956) (in interpreting statute, state supreme court must assume that legislature acted with knowledge of existing provisions of related federal statute). In addition, the ninety-day deadline for passing the school board resolution and dividing the district into zones is obviously imposed so that there will be time to put the plan into effect at the upcoming annual school election. Otherwise, there would be no need to impose a ninety-day deadline before the election. In my opinion, therefore, the words "after each federal decennial census and at least ninety (90) days before the annual school election," refer to the school election in the "01" year.
Question 2 — Are school districts to determine whether they have a tenpercent (10%) or greater minority population of the total population ofthe school district or only of the qualified elector population of theschool district?
In my opinion the determination must be based upon the total population of the school district. This fact was made plain by a 1999 amendment to A.C.A. § 6-13-631. Act 1078 of 1999, in Section 39, amended subsection (a) of the statute to insert the words "out of total population" after the words "minority population." In my opinion, therefore, it is clear that the calculation is based upon total population, rather than qualified elector population.
Question 3 — Pursuant to A.C.A. § 6-13-631 (Repl. 1999), is theDepartment of Education required to withhold twenty percent (20%) ofstate funding to a school district that has a ten percent (10%) orgreater minority population, does not qualify for an exemption tozoning, and attempts to divide into single-member zones prior to ninety(90) days before the annual school election but does not receive approvalof the single-member zones from the controlling county board of electioncommissioners prior to the annual school election and, therefore, is notin compliance with the zoning requirements?
I interpret your question as being whether the Department must withhold state funds if the school district passes the resolution prior to the ninety-day deadline (June 20, 2001) and begins the process of dividing into single-member zones before the applicable deadline, but the work is not completed in time and school board members are not elected from single member zones at the September 2001 election. It is difficult to answer this question because the current rules and regulations of the State Board of Education do not appear to be consistent with a 1999 amendment of A.C.A. § 6-13-631. In my opinion, however, such a district will be out of compliance with the statute for at least several weeks after the August 1, 2002 reporting date until the annual election of September 2002 can be held and zoned directors elected. The question of when the Department must withhold funds for such noncompliance, however, is unclear. The current rules and regulations in this regard are not consistent with the August 1, 2002, reporting date.
As noted previously, subsection (h) of A.C.A. § 6-13-631 provides that:
 (h)(1) On or before August 1, 2002, and every decade thereafter, each and every school district shall submit to the Department of Education a letter stating whether or not its school board falls under this section. In that same letter, each school district that falls under this section shall state how it has complied with this section. Furthermore, in the same letter, any school district that believes that it is exempt from this section shall state under which provision it is exempt.
 (2) The department shall withhold twenty percent (20%) of the annual state funds allocation to a school district not in compliance with this section. [Emphasis added.]
Subsection (h)(1) was inserted into the statute by Section 39 of Act 1078 of 1999. It contains an August 1, 2002, reporting date for compliance. The placement of this new subsection (h)(1) just prior to the requirement that the Department withhold funds appears to indicate a legislative intent that the reporting requirement is a necessary prerequisite to any withholding of funds. Under the statute, therefore, the district you describe will report to the Department before August 1, 2002 that it has passed a resolution selecting one of the appropriate board compositions, and perhaps has by that time taken steps to divide into single-member zones. Such a district may also, by that date, have received approval of the county board of election commissioners. It will not be possible, however, for such a district to be in total compliance with the statute, however, because if no single-member zone directors were elected at the 2001 annual school election, the earliest they could be elected is at the September 2002 annual school election, several weeks after the reporting deadline. Such a district will not be able to report total compliance on August 1, 2002. Again, the district must report how it has "complied" (past tense) by August 1, 2002. Reading the statute as a whole, it is my opinion that "compliance" includes the actual election of directors from the new single-member districts.
Even though such a district will be out of compliance after the August 1, 2002, reporting date, the statute is not clear as to the time the Department must begin the withholding of funds. The current rules and regulations of the Department on this point provide in pertinent part as follows:
 3.02 If a school district does not fit within one of the exemptions described in section 3.01 above and the district is comprised of a 10% or more minority population, the district shall certify whether by October 15 of each school year as part of the Annual School Report whether the district has one of following compositions for its local school board:
 a. A five single member district board selected in compliance with Act 786 of 1993;
 b. A seven single member district board selected in compliance with Act 786 of 1993; or
 c. A seven member board selected in compliance with Act 786 of 1993 with five members elected from single member districts and with two members elected at-large.
4.00 Withholding State Aid
 4.01 If a school district does not certify to the Department that the district meets one of the exemptions in Section 3.01 above or that the district has one of the boards described in Section 3.02 above, then the Department must withhold 20% of the state aid distributed to the district.
 4.02 For those districts which the Department must withhold state aid, the Department will begin withholding 20% of state aid each November and continue withholding aid until such time the district either is exempt from Act 786 or complies with this Act.
These regulations do not appear to jibe with the relatively new August 1, 2002, reporting date in A.C.A. § 6-13-631. If reference is had solely to the regulations, each district is to report compliance by October 15 of each school year. For the district you describe in your third question, under the regulations noncompliance would have to be reported by October 15, 2001. The Department would thereafter be required to withhold twenty percent of the state funds beginning in November 2001 and until the district comes into compliance, presumably in September 2002.
The 1999 amendment of A.C.A. § 6-13-631, however, imposes a once a decade reporting requirement on a date different from that set in the regulations and apparently sets it up as a trigger for the mandatory[2]
withholding of state funds. The 1999 amendment to the statute therefore sets a later date (August 1, 2002) for reporting compliance than the existing State Board of Education regulations. The answer to your third question, therefore, is unclear, because the statute itself does not address when the Department must begin withholding state funds and the existing regulations cannot, in my opinion, control over the statute's later reporting date. There is thus no discrete provision of law answering your question. Clarification of the matter by the State Board may be necessary.
Question 4 — If the Department of Education is required to withholdfunding to a school district that fails to comply with the requirementsof A.C.A. § 6-13-631 (Repl. 1999), from which school year should thefunds be withheld from the school district, the school year of thefailure to comply or the school year the district is required to reportnoncompliance (i.e., school year 2001-2002 or school year 2002-2003)?
As stated above, in my opinion the reporting date of August 1, 2002, which was added to the statute in 1999, must occur prior to the withholding of state funds. The answer to your question, therefore, cannot be the 2001-2002 school year. It will of necessity involve the withholding of funds beginning after the August 1, 2002 reporting date, which will be either just prior to or during the 2002-2003 school year. Again, however, the exact date on which the Department is required to withhold state funds is unclear. In addition, it appears that a district such as the one you describe would be able to achieve compliance with the statute at least by the September 2002 annual school election.
Senior Assistant Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:ECW/cyh
[1] This statute was amended by Act 1716 of 2001 to add a provision in subsection (g), which is not reproduced above. The Act is not yet effective and is not relevant to the analysis herein.
[2] The statute uses the mandatory word "shall" in subsection (h)(2) ("[t]he Department shall withhold twenty percent (20%) of the annual state funds allocation to a school district not in compliance with this section." Emphasis added. The statute also gives the Department the power to adopt rules and regulations to implement the statute. A.C.A. §6-13-631(i).